OPINION.
{¶ 1} Defendant-appellant Larry Beagle appeals from his conviction and sentence for DUI, following a no-contest plea. Beagle contends that the trial court erred by denying his motion to suppress evidence obtained as the result of his allegedly unlawful arrest. Beagle contends that the results of certain field sobriety tests should not have been considered, because they were not performed in strict accordance with regulations of the National Highway Traffic Safety Administration, as required by Statev. Homan (2000), 89 Ohio St.3d 421. Beagle contends that without the results of the field sobriety tests, the arresting officer lacked probable cause for the arrest, which led to the breath alcohol test result.
 {¶ 2} At the suppression hearing, the arresting officer conceded that he had not inquired concerning physical impairments, as required by the regulations. Consequently, we agree with Beagle that the field sobriety tests ought not to have been considered. When the results of the field sobriety tests are excluded, we agree with Beagle that the arresting officer lacked probable cause for the arrest. Consequently, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings.
 I {¶ 3} A little after 1:00, one morning in January, 2002, Ohio State Trooper Doug Bitler, observed a vehicle being driven by defendant-appellant Larry Beagle in the center lane of the three westbound lanes of Interstate 70, near State Route 4. Bitler saw the vehicle drift twice across the right dividing line, about the width of a tire, at one point coming "very close" to the car it was overtaking. Bitler then saw Beagle pull all the way over to the left side of the lane he was in, but without crossing the left lane line.
 {¶ 4} After Beagle and Bitler had passed the vehicle in the right-most lane, they both shifted into that lane, and Bitler activated his overhead lights, effecting a traffic stop. Bitler described the stop of Beagle's van, as follows:
 {¶ 5} "The van was slow in stopping and as he started to pull the van off the road, there is a light post out that way because we're close to Exit 46 to 675, and he started off the right-hand side of the road and then came very close to hitting the light post, and then kind of jerked the wheel and then went around and then stopped the van."
 {¶ 6} Bitler had Beagle exit the van. Bitler detected an odor of alcohol. Bitler had Beagle enter Bitler's cruiser, and sit in the passenger seat. The odor of alcohol intensified, becoming "a strong odor."
 {¶ 7} Bitler did not notice anything out of the ordinary in the appearance of Beagle's eyes or in Beagle's manner of speech. Bitler asked Beagle how much Beagle had had to drink, and Beagle responded that "he had three shots of Jack."
 {¶ 8} Bitler performed a horizontal gaze nystagmus test inside the cruiser, while they were both seated in the front seat. Beagle tested positive on five of six clues.
 {¶ 9} Bitler then administered the one-legged stand test, which Beagle failed to perform satisfactorily. Finally, Bitler had Beagle perform the walk-and-turn test. Beagle moved his feet during the instructions, and took an additional two steps upon his return, after pivoting, but otherwise performed this test satisfactorily.
 {¶ 10} Following the administration of the field sobriety tests, Bitler arrested Beagle and took him to jail, where Beagle was given a breath alcohol test. Following that test, Beagle was charged with DUI.
 {¶ 11} Beagle moved to suppress the breath test result, contending that it was obtained as the result of an unlawful arrest. Following a suppression hearing, the trial court denied Beagle's motion to suppress. Thereafter, Beagle pled no contest, was found guilty, and was sentenced accordingly. From his conviction and sentence, Beagle appeals.
 II {¶ 12} Beagle's First Assignment of Error is as follows:
 {¶ 13} "The trial court erred by failing to suppress all the field sobriety tests since the state failed to meet it's [sic] burden of proof establishing the standards and guidelines used by the officer and the tests were not administered in strict compliance with the NHTSA standards."
 {¶ 14} Beagle cites State v. Homan, supra, for the proposition that the results of field sobriety tests, to be admissible in evidence, or to be considered in connection with a finding of probable cause for an arrest, must be administered strictly in accordance with the standards set forth in the National Highway Traffic Safety Administration manual. The State does not disagree with this proposition, but contends that the evidence in the record supports a finding that the three field sobriety tests Bitler performed — the horizontal gaze nystagmus test, the one-legged stand test, and the walk-and-turn test — were administered in compliance with the NHTSA manual.
 {¶ 15} We conclude that the record does not support the State's position. Beagle attempted to examine Bitler in some detail as to which edition of the NHTSA manual he was following. Beagle's attempts to do so were not entirely successful. However, Bitler admitted that an officer is required to determine whether an individual is able to perform the field sobriety tests, before the tests are performed:
 {¶ 16} "Q. OK, then you go into his ability to understand and do the required tests that you give him. Now, are you required to determine whether or not this individual is able to perform these exercises that you give him before you give them to him?
 {¶ 17} "A. Yes.
 {¶ 18} "Q. Isn't that part of your training to screen a person first?
 {¶ 19} "A. Yes.
 {¶ 20} "Q. For example, one thing is you're to determine whether or not they have a glass eye, isn't that correct?
 {¶ 21} "A. Yes.
 {¶ 22} "Q. OK, and you're to determine whether they're over 60 years of age or over 50 pounds overweight. Those things would exclude them from having to take the balance test, compounded that together, the over the age and the over the weight would cause the balance test to be excluded, would they not?
 {¶ 23} "A. Yes.
 {¶ 24} "Q. All right, and as a relation of the glass eye. Those are things you're required to do, aren't they?
 {¶ 25} "A. Yes.
 {¶ 26} "Q. All right, additionally aren't you required to determine whether they've had any injuries that would affect their balance before you give them a balance test?
 {¶ 27} "A. Yes.
 {¶ 28} "Q. OK, now, the prosecutor asked you if he told you about any injuries or complained of any ailments. Isn't it true that you did not inquire of any prior surgeries or injuries that he's had to his ankle, back, knee, leg, hips, anything that would affect his balance? You didn't inquire of that?
 {¶ 29} "A. I didn't inquire that, no."
 {¶ 30} Furthermore, Bitler did not ask Beagle about any visual impairments that would have prevented him from doing the horizontal gaze nystagmus test:
 {¶ 31} "Q. I didn't ask you about glasses. I asked you about whether or not you asked him if he had a glass eye or had any eye problems that would prevent him from doing this HGN test?
 {¶ 32} "A. No, I did not."
 {¶ 33} We conclude that the record supports Beagle's contention that Bitler was required by the NHTSA manual to inquire concerning any physical or visual impairments that would have prevented Beagle from performing the tests, and that Bitler failed to do so. Accordingly, we agree with Beagle that the results of the field sobriety tests should have been suppressed, and, pursuant to State v. Homan, supra, should not have been considered in determining whether there was probable cause for the arrest.
 {¶ 34} Beagle's First Assignment of Error is sustained.
 III {¶ 35} Beagle's Second Assignment of Error is as follows:
 {¶ 36} "The trial court erred by failing to suppress all evidence obtained by the police when the manifest weight of evidence showed there was a lack of probable cause to arrest the appellant for R.C. 4511.19."
 {¶ 37} In this assignment of error, Beagle contends that when the results of the field sobriety tests are excluded from consideration, Bitler lacked probable cause to arrest Beagle for DUI. In Part II, above, we have agreed with Beagle that the field sobriety tests, not having been performed in strict accordance with the NHTSA Manual, as required by State v. Homan, supra, should be excluded from consideration in determining whether there was probable cause for Beagle's arrest. We must now determine whether Bitler had probable cause for the arrest, independently of the results of the field sobriety tests.
 {¶ 38} Although the issue is close, we conclude that Bitler lacked probable cause for the arrest. The existence of probable cause for a DUI arrest is fact-sensitive, and depends upon the totality of the circumstances. All material observations should be considered. In the case before us, Bitler's observations weighing in favor of a conclusion that Beagle was under the influence included: (1) Beagle's having crossed the right lane line by a tire's width, two times, a little after 1:00 in the morning, coming "very close" to hitting a vehicle in the adjacent lane; (2) Beagle's having then driven to the extreme left side of his lane, but without crossing the lane line; (3) Beagle's having been slow in stopping, and having come "very close" to hitting a light post off the right side of the road while pulling over, but successfully driving around the light post; (4) Beagle's having had an odor of alcohol, which intensified when he and Bitler entered Bitler's cruiser; and (5) Beagle's having admitted that he had had "three shots of Jack." The record does not reflect what "three shots of Jack," may have been. Nor does the record reflect the time frame within which those three shots were consumed, although the strong odor of alcohol suggests a reasonable inference that the shots were an alcoholic beverage, and that at least one of the shots was recently consumed. Bitler's observation of Beagle's driving, while consistent with an inference that Beagle was under the influence of alcohol, is also susceptible of other inferences. Considering the hour of night, Beagle may have been tired, and he may have been less sensitive to the possible proximity of a vehicle to his right. And, although Beagle's having come "very close" to hitting the light post on the side of the road when pulling over upon being stopped might be explained by his having been under the influence of alcohol, he may also have been somewhat disconcerted and distracted upon being pulled over by a state highway patrol officer.
 {¶ 39} Against the evidence suggesting the possibility that Beagle might be under the influence of alcohol is some countervailing evidence. This would include: (1) his having had no trouble in exiting his vehicle or walking back to Bitler; (2) the lack of any slurred or mumbled speech; (3) the lack of any bloodshot or red eyes; (4) the fact that Beagle's clothes were neither soiled nor disorderly; (5) the fact that Beagle had no difficulty producing his license when requested to do so; (6) the fact that Beagle took no unusual actions, and made no unusual statements; and (7) the fact that Beagle used no vulgar or abusive language.
 {¶ 40} When all these facts are considered in their totality, we conclude that Bitler had, at most, a reasonable suspicion that Beagle may have been under the influence of alcohol. We agree with Beagle that the totality of these circumstances, when the results of the field sobriety tests are excluded, do not rise to the level of probable cause to believe that Beagle was under the influence of alcohol.
 {¶ 41} Beagle's Second Assignment of Error is sustained.
 IV {¶ 42} Both of Beagle's assignments of error having been sustained, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings.
GRADY and YOUNG, JJ., concur.